IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3240-FL

| | | |
|---|---|---|
| IRA DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| THAD HUBLER, TONIA MATTHEWSON, B. DAVIS, and CHARLES E. SAMUELS, JR., | ) ) ) | |
| Defendants. | ) ) | |

This matter comes before the court on defendants' second motion to dismiss (DE 37),[1] to which plaintiff responded. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion.

**STATEMENT OF THE CASE**

On November 21, 2011, plaintiff, a federal inmate then incarcerated at Rivers Correctional Institution ("Rivers"),[2] filed this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against the United States. The court subsequently directed plaintiff to file his action on the proper form. Then, on August 1, 2012, the court, in an effort to clarify plaintiff's cause of action, directed plaintiff to inform it whether he

---

[1] Because defendants attached materials that are outside of the pleadings, the court construes defendants' motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

[2] The Federal Bureau of Prisons has a procurement contract with GEO Group ("GEO") under which it pays GEO to house federal inmates at Rivers, a privately run correctional institution. See Holly v. Scott, 434 F.3d 287, 288 (4th Cir. 2006); see also, Mathis v. GEO Group, Inc., No. 2:08-CT-21-D (E.D.N.C. Sept. 29, 2010).

sought relief pursuant to the Federal Tort Claims Act ("FTCA"), <u>Bivens</u>, or both. In response, plaintiff indicated his intention to pursue a <u>Bivens</u> cause of action against defendants, as well as defendant Eric H. Holder ("Holder"), and the court construed plaintiff's action as such. The court then dismissed plaintiff's action against the United States without prejudice, and allowed plaintiff to proceed with his claim that defendants, including Holder, violated his rights pursuant to the Free Exercise Clause of the First Amendment to the United States Constitution, because they "denied [him] bean pies made from Salaam's Bakery Inc. . . . on Saviors Day and every week final call Messages of Worship[.]" (Am. Compl. (DE 7) p. 3.) Plaintiff also was permitted to proceed with his claim that, in 2011, he was denied the "Final Call," a weekly religious publication, in violation of the First Amendment and the Equal Protection Clause of the Fifth Amendment to the United States Constitution. As relief, plaintiff requests monetary damages and injunctive relief. In particular, plaintiff requests injunctive relief in the form of a court order directing that "the Final Call [be] procured [] at the Religious Services to be made available for all who wish to worship with the Nation of Islam." (Am. Compl. (DE 7), p. 4.)

On February 22, 2013, defendants Holder, B. Davis, Hubler, Matthewson, and Samuels filed a motion to dismiss, which this court construed as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that this matter should be dismissed because plaintiff failed to state a constitutional violation.

On July 30, 2013, the court entered an order granting defendants' motion for summary judgment as to plaintiff's "bean pie" related claim and his claim against Holder. The court, however, determined that defendants failed to address plaintiff's claims related to the alleged denial of the "Final Call" publications and denied defendants' motion for summary judgment as to these

claims. The court subsequently issued a case management order governing discovery and the filing of dispositive motions.

On January 31, 2014, defendants B. Davis, Hubler, Matthewson, and Samuels filed the instant motion, which was supported by an affidavit submitted by Matthewson. Defendants in their motion argue that plaintiff cannot establish a constitutional violation. Alternatively, these defendants assert the affirmative defense of qualified immunity. The motion was fully briefed.

## STATEMENT OF UNDISPUTED FACTS

The undisputed facts are as follows. Plaintiff was confined at Rivers from January 24, 2008, through February 7, 2013. (Matthewson Decl. ¶ 3.) During this time period, both the Federal Bureau of Prisons ("BOP") and Rivers each had policies providing that inmates may receive religious and other publications unless such publications are determined by the Warden (or, under Rivers' policy, the Warden's designee) to be detrimental to the security, good order, or discipline of the institution or admission of such publication might facilitate criminal activity. See 28 C.F.R. § 540.71; BOP Program Statement 5266.11, pp. 2-3; Rivers Policy 21.003, pp. 204.

When plaintiff was at Rivers, the BOP employed defendant Matthewson as a secure oversight monitor, defendant Hubler as a senior secure institution manager at Rivers, and B. Davis as secure oversight manager. (Id. ¶¶ 2, 4.) Defendants' job responsibilities involved monitoring the contract between the BOP and GEO, and they were responsible for reporting known or suspected contract discrepancies/breaches through the BOP's chain of command. (Id.) Defendant Samuels was appointed as Director of the BOP on December 21, 2011, which was after plaintiff filed this action. See http://www.bop.gov/about/agency/bio_dir.jsp.

3

Defendants' job responsibilities, however, did not include resolving grievances raised by Rivers' inmates regarding religious rights or publications. (Id. ¶ 4.) Rather, Rivers had an administrative remedy system designed to provide inmates with a mechanism for voicing grievances pertaining to their confinement at Rivers and obtaining appropriate remedies through GEO. (Id. ¶ 7.) Plaintiff utilized such system, and filed an administrative remedy request with Rivers' prison officials. (Compl. (DE 7), Attach. pp. 1-11.) Plaintiff did not grieve his claims related to the denial of the Final Call publication with the BOP.[3] (Id.)

## DISCUSSION

A.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

---

[3] Plaintiff did, however, grieve the bean pie issue to the BOP's prison officials. (Compl. (DE 7), Attach. pp. 1-11.)

B.   Analysis

Defendants raise the defense of qualified immunity in this Bivens action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

1.   Conspiracy

Plaintiff alleges that defendants "in conspiracy and individually [violated] his constitutional First Amendment [right] to receive [his] weekly Final Call religious messages . . . when the Christian Daily breads are given to them in discrimination." (Am. Compl. (DE 7) p. 4.) Plaintiff provides no factual support or evidence to support his conspiracy claim. Instead, plaintiff relies upon the conclusory allegations of conspiracy set forth in his pleadings, which are not sufficient to state a conspiracy claim. See Wiggins v. 11Kew Garden Court, 497 F. App'x 262, 264 (4th Cir. 2012) ("To properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."); Miller v. DeMarino, No. 1:01CV183, 2002 WL 32096597, at *1 (N.D.W. Va. Apr. 24, 2002) (finding that naked assertions of a conspiracy are not sufficient to support an action pursuant to 42 U.S.C. § 1983), aff'd, 45 F. App'x 292 (4th Cir. 2002). Thus, the court GRANTS defendants' motion for summary judgment as to plaintiff's conspiracy claim.

5

2. Individual Capacity First Amendment and Fifth Amendment Claims

The court now determines whether defendants, acting in their individual capacities, violated plaintiff's rights pursuant to the First or Fifth Amendments to the United States Constitution. Beginning with the First Amendment, the Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. 1; Goodall by Goodall v. Stafford County School Bd., 60 F.3d 168, 170 (4th Cir. 1995). The Free Exercise Clause extends to prisoners, and encompasses policies that impose a substantial burden on a prisoner's right to practice his religion. See O'lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Lovelace v. Lee, 472 F.3d 174, 198 n.8 (4th Cir. 2006).

Plaintiff, a member of the Nation of Islam religion, asserts that Hubler, Matthewson, B. Davis, and Samuels violated his First Amendment rights because the Final Call, a weekly Islamic religious publication, was not available to plaintiff at Rivers. Both BOP and Rivers' policy, however, permits inmates access to religious publications unless the Warden (or designee) determines that a publication is detrimental to the security, good order, or discipline of the institution or that admission of such publication might facilitate criminal activity. See 28 C.F.R. § 540.71; BOP Program Statement 5266.11, pp. 2-3; Rivers Policy 21.003, pp. 2-4. Accordingly, plaintiff is not challenging the BOP or Rivers policy governing religious publications, but is challenging the decision of the Rivers' Warden (or his designee) to allegedly deny plaintiff's request for the Final Call at Rivers. The Warden at Rivers is not named as a defendant in this action.

As for the named defendants, plaintiff has not stated how these defendants, who are all BOP employees, had any knowledge of or involvement the decision to deny plaintiff access to the Final Call. Further, there is no indication that defendants were involved in determining whether Rivers'

inmates, including plaintiff, could receive particular religious publication or in resolving grievances from Rivers' inmates pertaining to their religious rights or practices. (Matthewson Aff. ¶ 4.) Instead, the record reflects that GEO employees were responsible for addressing such issues. (Id. ¶ 6.) The record further indicates that plaintiff, in fact, presented a grievance regarding the instant issue to GEO staff, which was resolved by GEO staff, and not defendants. (Id.) Based upon the foregoing, the court finds that plaintiff has not established that defendants engaged in any conduct that substantially burdened plaintiff's religion. Thus, plaintiff failed to establish a First Amendment violation, and defendants are entitled to qualified immunity for this claim.

The court now turns to plaintiff's equal protection claim. Plaintiff alleges that while the Final Call was not provided in the chapel at Rivers, the Daily Bread, a Christian publication was made available to Christian inmates. To state a claim pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, a plaintiff first must demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In doing so, the plaintiff must set forth "specific non-conclusory factual allegations that establish an improper [discriminatory] motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (quotation omitted).

Plaintiff's allegations fail to assert sufficient discriminatory intent on behalf of defendants, who are each BOP employees, and not Rivers employees. As stated above, there is no indication or evidence that defendants were involved or had any knowledge of plaintiff's alleged deprivation of the Final Call. Based upon the foregoing, the court finds that plaintiff failed to state a claim pursuant to the Equal Protection Clause, and defendants are entitled to qualified immunity.

7

### 3. Supervisor Liability and Official Capacity Claims

To the extent plaintiff brings this action against Samuels, or any other defendant, in a supervisory capacity, the claim fails. Generally, the doctrine of vicarious liability is inapplicable to a Bivens action, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 694 (1978). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368, 372 (4th Cir.1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff cannot maintain a successful Bivens claim against Samuels as a supervisor because plaintiff fails to describe Samuels' personal fault based on his own conduct or another's conduct in the execution of his policies or customs. See, e.g., Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994); see also Monell, 436 U.S. at 663 n. 7 (recognizing supervisory liability may not be predicated on respondeat superior). Accordingly, Samuels is entitled to qualified immunity and summary judgment. See Harlow, 457 U.S. at 818 (permitting qualified immunity to a government official if a plaintiff fails to state a claim upon which relief may be granted).

To the extent plaintiff seeks to bring a Bivens claim against defendants in their official capacities[4] based upon the enactment of a policy which violated his constitutional rights, this claim too fails. Claims against defendants in their official capacities are claims against the entities for

---

[4] Although plaintiff's complaint states that he is suing defendants in their individual capacities only, plaintiff's allegations could be construed as an attempt to allege an official capacity claim against defendants.

8

which the officers were acting, in this case, the BOP. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Generally, Bivens is inapplicable to federal agencies or to a federal defendant sued in his/her official capacity. FDIC v. Meyer, 510 U.S. 471, 486 (1994); Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002). However, a plaintiff may pursue an official capacity claim pursuant to Bivens for injunctive relief. See Kirby v. City of Elizabeth City, N.C., 388 F.3d 440, 452 n. 10 (4th Cir.2004) (stating that injunctive relief sought by the plaintiff could only be awarded against the officers in their official capacities); see also, Singleton v. Brown, No. 1:12-cv-02985, 2014 WL 107987, at *4 (D.S.C. Jan. 9, 2014) ("[T]he undersigned agrees with Defendants that the court lacks subject matter jurisdiction to any claims Plaintiff may be asserting against Defendants in their official capacity for monetary damages. However, the court retains jurisdiction over Plaintiff's claims to the extent he sues Defendants in their personal capacity or sues for injunctive relief in their official capacity."), appeal dismissed, No. 14-6103, 2014 WL 1599504 (4th Cir. Apr. 22, 2014); Everett v. Francis, No. 5:07cv135, 2009 WL 2971359, *4 (N.D.W. Va. Sep.16, 2009) ("[T]he Bivens requirement that suits do not lie against federal officers in their official capacity contemplates claims for monetary relief, not injunctive relief.") (citing Meyer, 510 U.S. at 484).

Plaintiff, in this case, does not plead any facts to demonstrate that defendants personally promulgated a policy or were responsible for enforcing a policy or custom that violated a constitutional right related to plaintiff's ability to receive the Final Call publication. Nor has plaintiff identified a BOP policy or custom which purportedly violated his constitutional rights. Rather, plaintiff takes issue with the implementation of Rivers' policy by Rivers' employees, which is not actionable in this action against BOP employees.

9

## CONCLUSION

Based upon the foregoing, defendants' motion for summary judgment (DE 37) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 10th day of June, 2014.

*[signature]*

LOUISE W. FLANAGAN
United States District Judge